Minnie Mae **LUTTRELL**, Plaintiff,

v.

**UNITED STATES GOVERNMENT,**
**Defendant.**

No. CIV. 01–923–R.

United States District Court,
W.D. Oklahoma.

Oct. 26, 2002.

---

Dean Rinehart, Rinehart Rinehart & Rinehart, El Reno, OK, for Plaintiff.

Kay D. Sewell, Eleanor D. Thompson, US Attorney's Office, Oklahoma City, OK, for Defendant.

## ORDER

DAVID L. RUSSELL, District Judge.

Before the Court are cross motions for summary judgment filed by Defendant United States of America and Plaintiff Minnie Mae Luttrell on Plaintiff's Com-

plaint brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b).

 Defendant asserts that Plaintiff's claim is barred by the discretionary function exception to FTCA, 28 U.S.C. § 2680(a). If that exception applies to the challenged governmental conduct, the United States' sovereign immunity is not waived but is retained and the Court is without subject matter jurisdiction over Plaintiff's Complaint. *See, e.g., Domme v. United States,* 61 F.3d 787, 789 (10th Cir. 1995). To determine whether the discretionary function exception applies, the Court applies the two-step analysis set forth in *Berkovitz ex rel. Berkovitz v. United States,* 486 U.S. 531, 536–37, 108 S.Ct. 1954, 100 L.Ed.2d 531, 540–41 (1988) in which the Court first determines whether the governmental conduct in question "is a matter of choice for the acting employee," *id.,* 486 U.S. at 536, 108 S.Ct. 1954, 100 L.Ed.2d at 540, or whether instead a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.,* 486 U.S. at 536, 108 S.Ct. 1954, 100 L.Ed.2d at 540–41. If, under the first part of the test, the governmental conduct in question does involve an element of judgment or choice, then, under the second part of the *Berkovitz* test, the Court must "determine whether that judgment is of the kind that the discretionary function exception was designed to shield," *id.* 486 U.S. at 536, 108 S.Ct. 1954, 100 L.Ed.2d at 541, that is, whether it was "grounded in social, economic and political policy" considerations, or the governmental action or decision was "based on considerations of public policy." *Id.,* 486 U.S. at 537, 108 S.Ct. 1954, 100 L.Ed.2d at 537, *citing Dalehite v. United States,* 346 U.S. 15, 36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953). And when "established governmental policy, as expressed or implied by statute, regulation or agency guidelines, allows for a Government agent

to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *United States v. Gaubert,* 499 U.S. 315, 324, 111 S.Ct. 1267, 1274, 113 L.Ed.2d 335, 348 (1991). Thus, when a governmental decision or action is "susceptible to" policy analysis, not just subjectively "based on" policy considerations or analysis, the decision or action is the kind of discretionary function the exception was designed to shield. *Gaubert,* 499 U.S. at 325, 111 S.Ct. 1267, 113 L.Ed.2d at 348. *See Franklin Savings Corp. v. United States,* 180 F.3d 1124, 1135 (10th Cir.), *cert. denied.,* 528 U.S. 964, 120 S.Ct. 398, 145 L.Ed.2d 310 (1999).

 Plaintiff does not allege or assert that the number of staff who escorted Inmate Bolain to Park View Hospital on March 5, 1999, was inadequate or that those staff members were not properly trained or negligent. Rather, Plaintiff alleges and asserts that FCI–El Reno "failed to provide sufficient and properly trained personnel to protect the Plaintiff from person[al] attack" when they had a duty to protect Plaintiff from same by Inmate Bolain. Complaint at ¶ 4. *See* Plaintiff's Motion for Summary Judgment and Brief in Support Thereof at pp. 9–10. She also affirmatively asserts that

> FCI security detail should have transferred and removed Larry P. Bolain, Sr., from Park View Hospital to another medical facility for medical care when he could not receive medical care at Park View Hospital, because they were unable to control inmate, Larry P. Bolain, Sr., in said location sufficient to permit Park View Hospital's medical staff to administer care.

*Id.* at p. 10.

It is undisputed that in March of 1999, federal inmate Larry Paul Bolain, Sr. was classified as a "Low" security inmate at

the Federal Corrections Center in El Reno, Oklahoma (FCI–El Reno) and was in custody level classification "IN." Affidavit of An Tran (Exhibit "G" to Defendant's Brief) at ¶ 4 & n. 1. Inmate Bolain had end-stage liver disease secondary to cirrhosis, attributed to hepatitis B and C, which required treatment at a hospital. *Id.* at ¶ 3. Bureau of Prisons' Program Statement ("BOP P.S.") 5538.04, *Escorted Trips,* establishes procedures to be followed when an inmate is transported into the community for medical care and other reasons. *See* BOP P.S. 5538.04 attached as Exhibit "1" to the Declaration of An Tran. Paragraph 12(b) of BOP P.S. 5538.04 provides that for "IN" Custody inmates, "[a] minimum of two staff escorts for the first inmate" must escort the inmate and that "[t]he Warden may require an additional number of escorts if he/she determines it is warranted." BOP P.S. 5538.04 at ¶ 12b(1). It further provides that "[a]t least one of the staff escorts must be a non-probationary staff member." *Id.*

It is undisputed that while Inmate Bolain was receiving treatment at Park View Hospital on March 5, 1999 and March 6, 1999, he was at all times escorted by or attended by at least two staff members. While the Warden could have required additional staff to escort or remain with Inmate Bolain while he received treatment at Park View Hospital, whether to require same was within the Warden's discretion under BOP P.S. 5538.04. Plaintiff has not alleged or produced any federal statute, regulation or agency guideline which directed that the Warden supply more than two escorts for Inmate Bolain. Given the discretion granted to the Warden in BOP P.S. 5538.04, it must be presumed that his decision that two escorts would accompany and remain with Inmate Bolain while he received medical care and treatment at Park View Hospital was grounded in or susceptible to policy considerations such as the inmate's condition and behavior, the number of available staff, and costs. *See Gaubert, supra.*

■ With respect to the staff escorts' responsibilities toward an inmate while the inmate is receiving medical care and treatment at a private hospital such as Park View with whom the FCI–El Reno has a contract to provide medical services to inmates, Plaintiff has cited and produced an excerpt of FOB FCI–El Reno, Oklahoma Comprehensive Hospital/Physician Services, RFP 115–4049 (Exhibit "A" to Plaintiff's Motion for Summary Judgment), which states, in relevant part, as follows:

> The BOP shall be responsible for the custody of any inmate admitted to the Contractor's facility for care and treatment. The contractor shall not supervise or discipline any BOP staff or inmate.

RFP 115–4049 at p. 19.

Plaintiff also cites and submits the FCI El Reno Post Order for Local Hospital/Medical Escort Officer (Specific Post Order) (Exhibit "B" to Plaintiff's Motion for Summary Judgment), which in relevant part provides as follows:

CONDUCT WHILE ON HOSPITAL
DETAIL:

> . . . . .
> . . . . .
>
> Stay alert and move around when you can. Be observant of all coming and going of all staff. When in doubt, do not be hesitant to check identification on questionable individuals attempting access to the inmate. *The ultimate responsibility for the custody of the inmate is in your hands.* Exercise those precautions you deem necessary and within policy for the escort situation. The Escort Officers will be responsible for inspection of the room assigned to the inmate, and will be alert to identify

and remove any items which could be used as a weapon or to effect an escape. When away from the room for escorting the inmate to X-rays departments, testing labs, etc., the room will again be inspected upon return.

Specific Post Order at p. 5.

While both the RFP 115–4049 and Specific Post Order provide that the BOP and, specifically, the escort officers, have responsibility for the custody of an inmate receiving treatment at a local hospital, i.e., preventing the inmate's escape during hospitalization, neither of those policies direct the escort officers under what circumstances, if at all, they are to or may transfer an inmate to another hospital. Hence, it must be assumed that "[t]he decision as to when it is necessary to move an inmate to a more secure hospital for treatment is also discretionary in nature," as An Tran attests, Declaration of An Tran (Exhibit "G" to Defendant's Motion for Summary Judgment) at ¶ 10. Certainly, there is no federal statute, regulation or agency guideline which directed that the escort staff or BOP officials transfer Inmate Bolain to another hospital before Plaintiff was bitten by Inmate Bolain or before the Park View Hospital Transfer Order, see Exhibit "D" to Plaintiff's Motion for Summary Judgment, was entered. Indeed, the only written policy before the Court which addresses who is responsible for an inmate's inpatient admission, all inpatient care of an inmate and *discharge* of an inmate patient provides in relevant part as follows:

The admission procedures which will be followed when referring inmates to the Contractor's facility shall be as follows:

1. The contractor-provided physician or BOP physician recommends the inmate's admission to the BOP's Clinical Director of HSA.

2. The Clinical Director of HSA reviews all associated documentation to include the referral request, decides the course of action, and if a medical trip is appropriate.

If inpatient admission is necessary, the HSA or Clinical Director will notify the Captain, or the Lieutenant (in his/her absence) to make all arrangements for transportation and guard services for the inmate.

3. The *contractor-provided physician is responsible for* all inpatient/outpatient care to include but not limited to: conducting rounds, ordering tests, performing surgery, and *processing discharges.*

4. Upon discharge, the BOP shall take control of the inmate and transport him/her to the institutions.

RFP 115–4049 (Exhibit "A" to Defendants) Brief at ¶ A.1.1.7.1.2, p. 17 (emphasis added).

Moreover, all persons concerned testified and it is thus undisputed that if an inmate cannot be treated at a particular private hospital that has a contract with the BOP to provide medical care and treatment to inmates or the hospital is unable to provide medical care or treatment to an inmate because of his behavior, the physician in charge of his care at the private hospital makes the decision to transfer the inmate to another facility. *See* Deposition of Plaintiff at pp. 43 & 57; Deposition of Barbara Malcher, M.D. (Exhibit "G" to Defendant's Response to Plaintiff's Motion for Summary Judgment) at pp. 16–18 & 23; Memorandum dated March 6, 1999 from Donnie Long, Senior Officer Specialist at FCI–El Reno to T. Billingsley, Captain (Exhibit "E" to Plaintiff's Motion for Summary Judgment) at p. 2 ("At approximately 10:20 a.m. Park View Hospital staff advised that we needed to transport inmate Bolain out of Park View, they are refusing to treat him, due to his aggressive behavior."); Memorandum dated March 7,

1999 from J. Horn, Senior Officer, to T. Billingsley, Captain (Exhibit "C" to Plaintiff's Motion for Summary Judgment) at p. 2 ("At approximately 10:20 a.m., Park View Hospital, nursing staff, advised us that we needed to transport inmate Bolain out of Park View Hospital. They refused anymore treatment, due to his aggressive behavior."); Deposition of Jonathon Damrill (Exhibit "L" to Plaintiff's Motion for Summary Judgment) at p. 12 (decision that an inmate is not able to receive medical care by an outside medical facility or hospital is made at the hospital by the hospital and they will transfer him to another facility and FCI–El Reno will sometimes provide transport for the inmate); Deposition of Norman Eugene Maine (quoted in Response to Defendant's Motion for Summary Judgment at pp. 3–5) at pp. 21–23 ("If the Hospital had told us that they can't treat him, I would have contacted my supervisor and asked what they wanted to do, if they wanted us to bring him back to the institution or take him to another hospital," but Maine made no decision and had no option to make a decision to transfer the inmate in order that he could get medical care). To the extent the BOP has any authority to transfer an inmate to a more secure hospital for treatment, that decision is within the discretion of the Warden or his designee(s) because there are no federal directives requiring transfer. Declaration of An Tran at ¶ 10.

As is evident from the foregoing, there is no federal statute, regulation or policy which specifically prescribed that more than two staff escorts accompany Inmate Bolain to and/or remain with him at Park View Hospital nor were there any specific directives as to how such escorts were to discipline or supervise the Inmate while Park View Hospital was providing or attempting to provide Inmate Bolain medical care and treatment. Finally, there is no federal statute, regulation or policy specifically prescribing under what circumstances the BOP personnel are to transfer an inmate to another more secure medical facility other than upon discharge by the contractor-provided physician. Accordingly, all operative contracts and Program Statements left these decisions to the judgment or choice for the acting employee(s). Moreover, because the established agency guidelines allowed the BOP officials to exercise discretion in these matters, it must be presumed that their decisions and actions were grounded in policy considerations and, regardless of the BOP's employees' subjective intent, that the employees' decisions and actions are susceptible to policy analysis. *See Gaubert, supra.* Plaintiff, who has the burden of rebutting the presumption, has failed to present any evidence showing that the decisions and actions challenged were not based on policy considerations such as Inmate Bolain's security classification, medical condition and needs, the proximity of Park View Hospital and on Park View Hospital's medical decisions. *See Dykstra v. U.S. Bureau of Prisons,* 140 F.3d 791, 796 (8th Cir.1998); *Domme v. United States,* 61 F.3d at 793 (plaintiff has burden of producing evidence to rebut presumption that discretionary decisions or actions of governmental employees were grounded in policy considerations). Accordingly, the Court concludes that the discretionary function exception to the FTCA applies to the BOP's decisions and actions at issue herein, *see Berkovitz, supra; see also Gaubert, supra;* the United States retains its sovereign immunity from suit; and this Court lacks subject matter jurisdiction over Plaintiff's suit. *Domme v. United States,* 61 F.3d at 789 & 793.

■ However, even if the discretionary function exception does not apply and the Court has subject matter jurisdiction herein, Defendant is entitled to summary judgment on Plaintiff's negligence claim be-

cause Plaintiff has not shown and cannot show that there was any breach of a duty owed by Defendant to Plaintiff. The above-described facts as well as Plaintiff's own admission that there was nothing the FCI–El Reno staff escorts or "guards" could have done differently that might have stopped or prevented Inmate Bolain from biting Plaintiff's thumb negate any inference that a breach of duty by FCI–El Reno staff escorts or guards caused Plaintiff's injury. See Deposition of Plaintiff (Exhibit "E" to Defendant's Response to Plaintiff's Motion for Summary Judgment) at pp. 42–43. Moreover, although Plaintiff testified that she believes Inmate Bolain should have been transferred to another hospital when he became disruptive, *id.* at 42, she admitted and RFP 115–4049 provides that the decision to discharge or transfer a patient from Park View Hospital to any other medical institution is made by the attending physician. *Id.* at p. 57. Thus, to the extent Plaintiff's injury could be deemed to be caused by the failure to transfer Bolain to another facility, that failure is attributable to the attending physician and/or Park View Hospital, and not to any FCI–El Reno personnel. Although the doctor in charge of Inmate Bolain was called during the night and informed of Bolain's behavior, the doctor told Plaintiff to "get the medication given [to Bolain], that that had to be done." *Id.* at 27. Pursuant to the doctor's orders, Plaintiff as charge nurse directed the nurse assigned to Bolain to give him his medicine and, when that nurse reported to Plaintiff on the intercom that Bolain would not take the medicine, Plaintiff, pursuant to the doctor's orders, attempted to give Bolain the medicine and was injured while attempting to do so. *See id.* at pp. 27, 30–39. Accordingly, Plaintiff's injuries were the result of her own decision and/or that of the doctor in charge of Bolain's medical care and treatment at Park View Hospital and not caused by any action or inaction of FCI–El Reno personnel.

In accordance with the foregoing, Defendant's motion for summary judgment is GRANTED, Plaintiff's motion for summary judgment is DENIED and Plaintiff's Complaint is DISMISSED for lack of subject matter jurisdiction.